IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AVADEL CNS PHARMACEUTICALS LLC and AVADEL PHARMACEUTICALS PLC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 22-487 (MN) |
| JAZZ PHARMACEUTICALS, INC. and JAZZ PHARMACEUTICALS IRELAND LIMITED, | ) ) ) ) | **PUBLIC VERSION** |
| Defendants. | ) ) | |

**OPENING BRIEF IN SUPPORT OF DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS**

OF COUNSEL:

F. Dominic Cerrito
Gabriel P. Brier
Frank C. Calvosa
Adam DiClemente
QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Joseph M. Paunovich
QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

Abigail E. Clark
QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
2601 South Bayshore Drive, Suite 1550
Miami, FL 33133
(305) 402-4880

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

*Attorneys for Defendants*
*Jazz Pharmaceuticals, Inc. and*
*Jazz Pharmaceuticals Ireland Limited*

**Confidential Version Filed: July 8, 2022**
**Public Version Filed: July 15, 2022**

# TABLE OF CONTENTS

I.      NATURE & STAGE OF THE PROCEEDINGS ................................................................. 1

II.     SUMMARY OF ARGUMENT ....................................................................................... 1

III.    STATEMENT OF FACTS .............................................................................................. 2

IV.     LEGAL STANDARDS .................................................................................................. 4

V.      ARGUMENT ................................................................................................................ 6

    A.      Counts I-III (Breach of Contract) Fail to State a Plausible Claim For Relief .............. 6

        1.      Count I does not sufficiently plead the existence of a contract between Jazz and
            Flamel in 2010 ................................................................................................. 6

            (a)     Avadel does not allege sufficient facts showing that Jazz intended to be bound
                by any purported 2010 CDA ................................................................... 7

            (b)     Avadel does not allege sufficient facts showing sufficiently definite terms for
                any purported 2010 CDA ................................................................... 10

        2.      Count II does not sufficiently plead that Jazz breached the 2015 CDA .............. 11

        3.      Count III does not sufficiently plead that Jazz breached the 2018 CDA ............. 13

    B.      Counts IV and V (Trade Secret Misappropriation) Fail to State a Plausible Claim For
        Relief ............................................................................................................ 16

        1.      Counts IV and V do not sufficiently plead that slide decks provided to Jazz in
            2010 contained trade secrets ........................................................................ 16

        2.      Counts IV and V do not sufficiently plead that Jazz misappropriated any trade
            secrets in 2015 or 2018 ................................................................................ 19

    C.      Counts VI-XI (Correction of Inventorship) Fail to State a Plausible Claim For Relief
        ................................................................................................................. 19

VI.     CONCLUSION ............................................................................................................ 20

# TABLE OF AUTHORITIES

## Cases

*Abramo v. Ploener,*
   394 A.2d 758 (Del. Super. Ct. 1978) ........................................................................ 7

*Abrasic 90 Inc. v. Weldcote Metals, Inc.*
   364 F. Supp. 3d 888 (N.D. Ill. 2019) ...................................................................... 17

*Ahava Med. & Rehab. Ctr., LLC v. Berkovitch*
   No. 26230, 2008 WL 3932152 (N.Y. Sup. Ct. Aug. 27, 2008) ........................... 8, 9

*Ameritel Mobile LLC v. Wireless Connection*
   No. 4898/11, 2013 WL 5411705 (N.Y. Sup. Ct. Sept. 24, 2013)......................... 6, 7

*Black Horse Cap., LP v. Xstelos Holdings, Inc.*
   No. 8642-VCP, 2014 WL 5025926 (Del. Ch. Sept. 30, 2014) ............................. 7, 9

*Capstone Associated Servs., Ltd. v. Organizational Strategies, Inc.,*
   No. 15-3233, 2019 WL 3819085 (S.D. Tex. Aug. 14, 2019) .................................. 8

*Ceradyne, Inc. v. RLI Ins. Co.*,
   No. 20-1398, 2021 WL 3145171 (D. Del. July 26, 2021) ...................................... 6

*Citisteel USA, Inc. v. Gen. Elec. Co.*,
   78 F. App'x 832 (3d Cir. 2003) ............................................................................. 5

*Detringo v. S. Island Fam. Med., LLC,*
   158 A.D.3d 609 (N.Y. App. Div. 2018) .......................................................... 11, 13

*Eagle Force Holdings, LLC v. Campbell,*
   187 A.3d 1209 (Del. 2018) ............................................................................ 7, 9, 10

*Eli Lilly & Co. v. Aradigm Corp.,*
   376 F.3d 1352 (Fed. Cir. 2004) ........................................................................... 19

*Evancho v. Fisher,*
   423 F.3d 347 (3d Cir. 2005) ................................................................................. 5

*Feenix Payment Sys., v. Steel Cap. Mgmt.,*
   No. 20-1519, 2021 WL 2587844 (D. Del. June 24, 2021) ................................... 17

*Frye v. Raphaelson,*
   No. 2020-0325, 2021 WL 4073425 (Del. Ch. May 3, 2021)......................... 6, 9, 11

*Golub Cap. LLC v. NB Alts. Advisers LLC,*
    No. 21-399, 2022 WL 540653 (S.D.N.Y. Feb. 22, 2022) ................................ 12

*Greetham v. Sogima L-A Manager, LLC,*
    No. 2084-VCL, 2008 WL 4767722 (Del. Ch. Nov. 3, 2008) ............................ 8

*Hospitality Mktg. Concepts v. Six Continents Hotels,*
    No. 15-1791, 2016 WL 9045853 (C.D. Cal. May 2, 2016) ............................ 17, 18

*Iceotope Grp. Ltd. v. LiquidCool Sols., Inc.,*
    No. 20-2644, 2022 WL 204923 (D. Minn. Jan. 24, 2022) ................................ 20

*In re Aqua Hotel Corp.,*
    251 F.2d 138 (9th Cir. 1957) ................................................................ 13

*In re Burlington Coat Factory Sec. Litig.,*
    114 F.3d 1410 (3d Cir. 1997) ...................................................... 5, 9, 13

*In re Express Indus. & Term. Corp. v. New York State Dep't Transp.,*
    715 N.E.2d 1050 (N.Y. 1999) .............................................................. 10

*Intercept Pharms., Inc. v. Fiorucci,*
    No. 14-1313, 2017 WL 253966 (D. Del. Jan. 20, 2017) ................................ 20

*James Cable, LLC v. Millennium Digit. Media Sys., L.L.C.,*
    No. 3637-VCL, 2009 WL 1638634 (Del. Ch. June 11, 2009)........................... 8

*Kingsdown Med. Consultants, Ltd. v. Hollister Inc.,*
    863 F.2d 867 (Fed. Cir. 1988) .............................................................. 20

*Kotler v. Shipman Assocs., LLC,*
    2019 WL 4025634 (Del. Ch. Aug. 21, 2019) .......................................... 10

*L-7 Designs, Inc. v. Old Navy, LLC,*
    647 F.3d 419 (2d Cir. 2011) ................................................................. 5

*Lummus Corp. v. TFII Legacy, LLC,*
    No. 18-1745, 2019 WL 7494651 (D. Del. Dec. 19, 2019) .............................. 5

*Mandarin Trading Ltd. v. Wildenstein,*
    944 N.E.2d 1104 (N.Y. 2011) ................................................................ 6

*Marans v. Intrinsiq Specialty Sols., Inc.,*
    No. 18-256, 2018 WL 4759772 (S.D.N.Y. Sept. 30, 2018) ......................... 6, 10

*Matter of GEC Indus., Inc.,*
    123 B.R. 714 (Bankr. D. Del. 1991) ....................................................... 7

*McDermott v. Clondalkin Grp., Inc.*,
    649 F. App'x 263 (3d Cir. 2016) ................................................. 6

*Michaels Dev. Grp. Inc. v. Greene*,
    700 N.Y.S.2d 275 (N.Y. App. Div. 1999) .................................. 11

*MicroVention, Inc. v. Balt USA, LLC*,
    No. 20-2400, 2021 WL 4734611 (C.D. Cal. Sept. 9, 2021) .................. 19

*Muth v. Woodring*,
    755 F. App'x 109 (3d Cir. 2018) ............................................. 5, 20

*Oakwood Lab'ys. LLC v. Thanoo*,
    999 F.3d 892 (3d Cir. 2021) ................................................. 16

*Omega Optical, Inc. v. Chroma Tech. Corp.*, "
    800 A.2d 1064 (Vt. 2002) .................................................. 13

*Profit Point Tax Techs. v. DPAD Grp.*,
    No. 19-698, 2020 WL 759952 (W.D. Pa. Jan. 29, 2020) .................. 17

*Rosenau v. Unifund Corp.*,
    539 F.3d 218 (3d Cir. 2008) ................................................. 5

*Ruckelshaus v. Monsanto Co.*,
    467 U.S. 986, 1002 (1984) .................................................. 17

*Vorchheimer v. Philadelphian Owners Ass'n.*,
    903 F.3d 100 (3d Cir. 2018) ............................................. 5, 11, 14

*Wixen Music UK Ltd. v. Transparence Ent. Grp.*,
    No. 21-2663, 2021 WL 6065690 (C.D. Cal. Dec. 22, 2021) ................ 16

*Wolfington v. Reconstructive Orthopaedic Assocs. II PC*,
    935 F.3d 187 (3d Cir. 2019) ............................................. 5, 13, 14

## Statutory Authorities

18 U.S.C. § 1836 ................................................................ 16, 19

18 U.S.C. § 1839 (3)(A)–(B) ..................................................... 16

Cal. Civ. Code § 3426 ........................................................... 16, 19

## Rules and Regulations

Fed. R. Civ. P. 12(c) ............................................................ 4

## I.    NATURE & STAGE OF THE PROCEEDINGS

On April 14, 2022, Plaintiffs ("Avadel") filed a Complaint against Defendants ("Jazz"), asserting counts of: (1) breach of contract; (2) misappropriation of trade secrets; and (3) correction of inventorship of certain of Jazz's patents.[1]  D.I. 2.  On June 2, 2022, Jazz filed its Answer to Avadel's Complaint.  D.I. 18.  Jazz now moves for judgment on the pleadings, which demonstrate Avadel's failure to state a claim for which relief may be granted.

## II.    SUMMARY OF ARGUMENT

*First, Avadel fails to state a plausible breach of contract claim (Counts I-III)*.  Avadel pleads that Jazz and Avadel entered into Confidential Disclosure Agreements ("CDAs") in 2010, 2015, and 2018, and that Jazz breached those agreements by using Avadel confidential information for purposes of developing its own once-nightly GHB formulation and filing patent applications, rather than evaluating a potential deal.  But Avadel does not and cannot adequately plead at least: (1) the existence of a 2010 CDA; (2) that Jazz (instead of an external third party) received any Avadel confidential information under the 2015 CDA; and (3) that Jazz's supposed breach of the 2018 CDA occurred after receipt of any allegedly confidential information.

*Second, Avadel fails to state a plausible trade secrets misappropriation claim (Counts IV and V)*.  Avadel's pleadings here are based on the same alleged misconduct as its breach of contract claims, and they fail for at least the same reasons.  In particular, Avadel does not and cannot adequately plead at least that: (1) it took reasonable steps to protect any purported trade secrets in 2010; and (2) Jazz had any allegedly confidential information such that it could have misappropriated purported trade secrets based on disclosures made under the 2015 or 2018 CDA.

---

[1]   Those patents are U.S. Patent Nos. 10,758,488 (the "'488 patent), 10,813,885 (the "'885 patent"), 10,959,956 (the "'956 patent), 10,966,931 (the "'931 patent"), 11,077,079 (the "'079 patent"), and 11,147,782 (the "'782 patent").

***Third, Avadel fails to state a plausible correction of inventorship claim (Counts VI-XI)***.[2]  Each Count recites legal standards in conclusory fashion, but they are all based on Avadel's breach and misappropriation pleadings discussed above, and they fail for at least the same reasons.  Further, to the extent that these Counts are rooted in Jazz purportedly drafting patent claims based on Avadel's publicly available patent publications, the Federal Circuit has expressly authorized such conduct where, as here, there is no associated inappropriate conduct.

Judgment on the pleadings should be entered in Jazz's favor.[3]  Despite keeping contact with Jazz for more than a decade, and the publication of Jazz's patents that allegedly misused Avadel's information during that time, Avadel never accused Jazz of any wrongdoing.  Only in this litigation, after Jazz had sued Avadel for patent infringement, and with no FDA approval of its once-nightly sodium oxybate product, did Avadel baselessly lodge accusations against Jazz.

## III.    STATEMENT OF FACTS

For the past two decades, Jazz has been the market leader in sleep medicine, marketing both Xyrem® (sodium oxybate, a sodium salt of gamma-hydroxybutyrate or "GHB") and Xywav® (calcium, magnesium, potassium, and sodium oxybates).  *See* D.I. 18 at ¶¶ 2, 19.  As part of its continuing efforts to make additional options available in the sleep medicine field, Jazz has researched, developed, and patented once-nightly GHB formulations.  *See, e.g.*, *id.* at ¶ 21.

Avadel has also sought to develop once-nightly GHB formulations.  *See, e.g.*, D.I. 2 at ¶ 23.  Knowing that Jazz was the market leader in such technologies, Avadel (at the time, Flamel) reached out to Jazz in 2010 in an apparent attempt to solicit Jazz's partnership.  *See id.* at

---

[2]  These Counts are mislabeled in the Complaint; "Count V" appears where "Count VII" should be, and the remaining Counts are labeled Count VII-Count X.  Jazz renumbers them herein.

[3]  Avadel's claims fail for several other reasons.  *See generally* D.I. 18.  Jazz addresses only certain issues here, without waiving its right to address other issues should this action proceed.

¶ 25; D.I. 18 at ¶ 25.  At that time, Flamel's Chief Business Officer lauded Jazz's (and its CEO's) "substantial accomplishments," stating that Flamel had "been watching [Jazz's and its CEO's] progress over time and [was] impressed."  D.I. 2-4 at JPION00077862; D.I. 18 at ¶ 25. A third party with no known or pled relationship to Flamel—Brent Clough at InnerVation LLC—then sent Jazz two unsolicited emails and PowerPoint decks containing information related to Flamel's Micropump® technology.  D.I. 2-6; D.I. 2-7; D.I. 18 at ¶ 30.  Jazz noted

████████████████████████████████████████████████████████

████████████████ and in 2010, there were no business discussions or CDA (written or oral).

Several years passed before the parties again came into contact in 2014.  *See, e.g.*, D.I. 2 at ¶ 39.  Following some back and forth, the parties entered into their first CDA in March 2015 to consider potential collaboration.  D.I. 2 at ¶¶ 39, 42; D.I. 18 at ¶¶ 39, 42.  Notably, however, under the terms of the 2015 CDA, Jazz was not allowed to (and did not) receive any of Flamel's allegedly confidential information.  Instead, the parties structured the 2015 CDA so that only an external consultant, the "Designated Recipient," could receive Flamel's confidential information. D.I. 2-11; D.I. 18 at ¶¶ 42-43.  Then, that Designated Recipient, Dr. Leslie Z. Benet, could provide Jazz with his "general professional opinion or evaluation" regarding Flamel's development of once-nightly sodium GHB so that Jazz could evaluate whether to move forward with a potential business relationship with Flamel.  D.I. 2-11 at ¶ 2; D.I. 18 at ¶ 43.  Benet, however, was not permitted to reveal any of Flamel's confidential information to Jazz.  *Id.*

Avadel has not pled that Benet violated the terms of the 2015 CDA, nor would the facts support any such pleading.  Instead, Benet recommended that Jazz move forward in discussions with Flamel without discussing ███████████████████████████████

███████████████████████████████████████████ Following Benet's

recommendation, Jazz attempted to move on to next steps, but Flamel decided not to engage in further discussions. ████████████████████████████████████████████

    The parties next came into contact in 2018 when ███████████████████████ ████████████████████████████████████████████████████████████████ ██████ The parties entered into a second CDA in anticipation of these discussions.  D.I. 2-14; D.I. 2 at ¶ 51; D.I. 18 at ¶ 51.  Under the 2018 CDA, Jazz for the first time received Avadel purported confidential information on July 13, 2018.  D.I. 2 at ¶ 58; D.I. 18 at ¶ 58; ████████████████

    Notably, before the earliest possible disclosure of purported confidential information on July 13, 2018, Jazz had already filed the patent applications on which Avadel bases its claims.  In particular, the Sustained Release Patents[4] claim priority to an application filed on March 24, 2010 (before any purported disclosure of confidential information to Jazz).  *See* D.I. 18 at ¶ 102; D.I. 18-2, Ex. 67 at 1.  Further, Jazz filed patent claims containing the elements concerning dissolution profiles that Avadel alleges Jazz took from it on July 2, 2018—before the July 13, 2018 disclosure.  *See, e.g.*, D.I. 18 at ¶ 108; D.I. 18-2, Ex. 66.  Also, the application giving rise to the Controlled/Modified Release Patents[5] was filed by February 18, 2016—likewise before the July 13, 2018 disclosure.  *See, e.g.*, D.I. 2 at ¶¶ 78-79; D.I. 18 at ¶¶ 78-79, D.I. 2-42.  Thus, Jazz did not have Avadel's purported confidential information at the times when Avadel alleges Jazz breached any agreements or misappropriated any purported trade secrets.

## IV. LEGAL STANDARDS

    "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  Judgment is proper when "the movant

---

[4]  "Sustained Release Patents" refers to the '488, '885, '956, and '931 patents.

[5]  "Controlled/Modified Release Patents" refers to the '079 and '782 patents.

clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008).

A Rule 12(c) motion is subject to the same standard as a Rule 12(b)(6) motion. *See Citisteel USA, Inc. v. Gen. Elec. Co.*, 78 F. App'x 832, 835 n. 3 (3d Cir. 2003). The court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Evancho v. Fisher*, 423 F.3d 347, 350-51 (3d Cir. 2005). However, it need not credit either "bald assertions" or "legal conclusions." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997); *see also Muth v. Woodring*, 755 F. App'x 109, 112 (3d Cir. 2018) (noting that the court "decide[s] whether the complaint, construed in the light most favorable to the plaintiff, contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, but . . . disregard[s] rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements").

In deciding a Rule 12(c) motion, the court "may consider the pleadings, corresponding exhibits thereto, and documents incorporated by reference." *Lummus Corp. v. TFII Legacy, LLC*, No. 18-1745, 2019 WL 7494651, at *4 (D. Del. Dec. 19, 2019). The court may also consider "matters of public record[ ] as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019). If exhibits to the pleadings contradict allegations in the complaint, "the exhibits control." *Vorchheimer v. Philadelphian Owners Ass'n.*, 903 F.3d 100, 112 (3d Cir. 2018); *see also L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) ("[W]e draw all facts—which we assume to be true unless contradicted by more specific allegations or documentary evidence—from the Complaint and from the exhibits attached thereto, and we also consider the emails attached to [the Answer].")

## V.     ARGUMENT

As explained below, the pleadings and other materials properly considered in deciding a Rule 12(c) motion, construed in the light most favorable to Avadel, demonstrate that there are no material issues of fact concerning the lack of sufficiency of Avadel's claims.

### A.     Counts I-III (Breach of Contract) Fail to State a Plausible Claim For Relief

Avadel alleges that it entered into CDAs with Jazz in 2010, 2015, and 2018, and that Jazz breached the CDAs by misusing Avadel's allegedly confidential information.  D.I. 2 at ¶¶ 129, 131, 137, 139, 145, 147.  Counts I-III, however, do not state plausible breach of contract claims.

### 1.     Count I does not sufficiently plead the existence of a contract between Jazz and Flamel in 2010

"[T]o state a breach of contract claim under Delaware law, [Avadel] must plead (1) the existence of a contract . . . ."  *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267 (3d Cir. 2016).[6]  A Complaint does not survive a motion for judgment on the pleadings by simply pleading "that the parties 'entered into a written agreement.'"  *Frye v. Raphaelson*, No. 2020-0325, 2021 WL 4073425, at *3 (Del. Ch. May 3, 2021); *see also Marans v. Intrinsiq Specialty Sols., Inc.*, No. 18-256, 2018 WL 4759772, at *4 (S.D.N.Y. Sept. 30, 2018).  Instead, "[t]o prove the existence of a contract, Plaintiff ha[s] to plead facts supporting[,]" among other things, "(1) the intent of the parties to be bound, [and] (2) sufficiently definite terms."  *Frye*, 2021 WL 4073425, at *2; *see also Ameritel Mobile LLC v. Wireless Connection*, No. 4898/11, 2013 WL 5411705, at *7-8 (N.Y. Sup. Ct. Sept. 24, 2013).  Avadel does not adequately plead these facts.

---

[6]   Avadel fails to state the governing law for Count I or attach an agreement with a choice of law provision.  Jazz applies Delaware law given that Avadel filed this lawsuit here and that the parties are incorporated in Delaware, with no common state for their principal places of business.  *See Ceradyne, Inc. v. RLI Ins. Co.*, No. 20-1398, 2021 WL 3145171, at *9 (D. Del. July 26, 2021).  To the extent that Avadel applies New York law to Count I (like it does for Counts II and III), the same legal requirements would apply.  *See, e.g.*, *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1110 (N.Y. 2011).  Jazz therefore also addresses New York law herein.

**(a)     Avadel does not allege sufficient facts showing that Jazz
intended to be bound by any purported 2010 CDA**

"[O]vert manifestation of assent—not subjective intent—controls the formation of a

contract." *Eagle Force Holdings, LLC v. Campbell*, 187 A.3d 1209, 1229 (Del. 2018). "To

determine whether a binding contract exists, therefore, courts in Delaware look for objective,

contemporaneous evidence indicating that the parties have reached an agreement, whether that

be in the parties' spoken words or writings." *Black Horse Cap., LP v. Xstelos Holdings, Inc.*,

No. 8642-VCP, 2014 WL 5025926, at *12 (Del. Ch. Sept. 30, 2014); *see also Ameritel Mobile*,

2013 WL 54116705, at *9 (same for New York law).

The Complaint is devoid of any allegation that Jazz intended to be bound by any alleged

2010 CDA—there is no objective, contemporaneous evidence of assent by Jazz, whether written

or oral.  As an initial matter, Avadel does not attach (nor could it) any "2010 CDA" to the

Complaint.  Nor is there any exhibit or pleading of "contemporaneous evidence indicating that

the parties ha[d] reached an agreement . . . in the parties' spoken words or writings." *Black

Horse*, 2014 WL 5025926, at *12.  Instead, Avadel pleads the following insufficient facts:

*First*, Avadel pleads that (1) Flamel "contacted Jazz to discuss a potential partnership"

(based on an unsolicited email lacking any confidentiality restrictions/limitations on use) (D.I. 2

and 18 at ¶ 25), and (2) third party Clough emailed Jazz (again unsolicited and without any

restrictions/limitations on use) the 2010 Trigger Lock™ Deck and the 2010 Micropump® Deck,

the latter of which was marked confidential.  D.I. 2 and 18 at ¶¶ 30-31.  But the unilateral

transmission of allegedly confidential documents—from a third party nonetheless—does not

demonstrate the recipient's intent to be bound by a CDA.  *See, e.g.*, *Abramo v. Ploener*, 394

A.2d 758, 760 (Del. Super. Ct. 1978) (one's "unilateral action [did not] create[] a meeting of the

minds"); *Matter of GEC Indus., Inc.*, 123 B.R. 714, 717 (Bankr. D. Del. 1991) ("Gates relies

- 7 -

upon invoices and monthly bills upon which Gates printed its service charge policy.  Gates offers no legal argument or case law, however, to explain how this unilateral action by Gates translates into a contract term about which there was a meeting of the minds."); *Capstone Associated Servs., Ltd. v. Organizational Strategies, Inc.*, No. 15-3233, 2019 WL 3819085, at *5 (S.D. Tex. Aug. 14, 2019) ("Feldman's unilateral email, to which there was no response, does not provide a factual basis for the existence of a confidential relationship between Capstone and Defendants. Additionally, the facts alleged in the Amended Complaint do not establish an agreement . . . ."); *Ahava Med. & Rehab. Ctr., LLC v. Berkovitch*, No. 26230, 2008 WL 3932152, at *7 (N.Y. Sup. Ct. Aug. 27, 2008) ("This unilateral response to Kramer's estimate, with incomprehensible terms and no proof or even allegation of a response by Kramer, demonstrates that there was no meeting of the minds in the formation of any contract.").

Avadel had to plead how mutual assent was manifested.  Avadel did not (because it cannot) do so; instead, Avadel merely pleads that Jazz was sent unsolicited emails from a third party with no known or pled relationship to Flamel.  These pleadings—even accepted as true—cannot demonstrate an overt manifestation of assent.  *See, e.g.*, *James Cable, LLC v. Millennium Digit. Media Sys., L.L.C.*, No. 3637-VCL, 2009 WL 1638634, at *7 (Del. Ch. June 11, 2009) (dismissing claims where "[t]he amended complaint fails to define . . . how mutual assent was manifested"); *Greetham v. Sogima L-A Manager, LLC*, No. 2084-VCL, 2008 WL 4767722, at *16 (Del. Ch. Nov. 3, 2008) ("Since [plaintiff] had not received comments from [defendant's representatives] and only received 'preliminary comments' from [another representative], it is not reasonable to conclude that the parties intended to be bound by the agreement.").

*Second*, Avadel pleads that, "[a]t the time [of the 2010 discussions], Avadel's business practice and course of conduct when engaging in discussions with potential commercial partners

was to disclose confidential information pursuant to a *written, executed* CDAs [sic] prohibiting

the disclosure or use of Avadel's confidential information." D.I. 2 at ¶ 26 (emphasis added).

But despite attaching forty-eight exhibits to the Complaint, Avadel offers no evidence of any

such "business practice and course of conduct" in or around 2010. Moreover, even accepting

this unsubstantiated allegation as true, Avadel's inability to identify or attach a "*written,*

*executed* CDA" to its Complaint demonstrates that it did not follow its alleged business practice

and course of conduct with Jazz in 2010. And even if Avadel had such a practice and attempted

to follow it, at most, it indicates that *Avadel, not Jazz,* intended to be bound by a CDA in 2010.

*Third*, Avadel pleads that a 2010 CDA existed "on information and belief." *See id.* at

¶¶ 27, 127, 129. But merely pleading the existence of a contract on information and belief does

not support a plausible claim for relief. *Frye*, 2021 WL 4073425, at *3. Such bald assertions

need not be accepted as true. *In re Burlington*, 114 F.3d at 1429-30. In fact, that Avadel failed

to attach to its Complaint any competent evidence of a purported 2010 CDA speaks volumes.

*Fourth*, Avadel pleads that a Jazz employee, Clark Allphin, "described the 2010

discussion with Avadel in an email as a 'confidential discussion.'" D.I. 2 at ¶ 28. But Avadel

omits that the email it relies on is dated October 1, 2020—a decade after the alleged 2010 CDA.

*See* D.I. 2-5; D.I. 18 at ¶ 28. Avadel also omits that the email expressly states that Allphin "was

not involved in the . . . discussion." D.I. 2-5. Thus, Avadel's Complaint contains no competent

or "*contemporaneous* evidence" demonstrating the existence of a 2010 CDA, much less an overt

manifestation of assent by Jazz in 2010. *Black Horse*, 2014 WL 5025926, at *12 (emphasis

added); *see also Eagle Force*, 187 A.3d at 1229-30; *Ahava*, 2008 WL 3932152, at *7.

In sum, the Complaint contains no allegations that plausibly support the existence of any

2010 CDA. And even "[i]f the Court finds substantial ambiguity regarding whether both parties

have mutually assented to all material terms, then the Court can neither find, nor enforce, a contract." *Kotler v. Shipman Assocs., LLC*, 2019 WL 4025634, at *16 (Del. Ch. Aug. 21, 2019). For at least this reason alone, the Court should enter judgment on the pleadings for Count I.

**(b)**      **Avadel does not allege sufficient facts showing sufficiently definite terms for any purported 2010 CDA**

"A contract is sufficiently definite and certain to be enforceable if the court can—based upon the agreement's terms and applying proper rules of construction and principles of equity—ascertain what the parties have agreed to do." *Eagle Force*, 187 A.3d at 1232; *see also In re Express Indus. & Term. Corp. v. New York State Dep't Transp.*, 715 N.E.2d 1050, 1053 (N.Y. 1999); *Marans*, 2018 WL 4759772, at *4. Avadel's inability to plead sufficient facts to meet this standard provides an independent basis to enter judgment on Count I.

Avadel's sole pleading with respect to terms of the alleged 2010 CDA is that "[o]n information and belief, the 2010 CDA prohibited the use of Avadel's confidential information for any purpose other than to evaluate a potential partnership between Avadel and Jazz." D.I. 2 at ¶ 29; *see also id.* at ¶ 129. However, Avadel does not plead (nor could it do so because there was no 2010 CDA): (1) what was purportedly defined as "confidential" in the alleged 2010 CDA; or (2) how long the terms of purported confidentiality and/or limitation on use were enforceable. This stands in stark contrast to Avadel's pleadings for the 2015 and 2018 CDAs. *See, e.g.*, D.I. 2 at ¶ 44 ("[T]he 2015 CDA defines 'confidential information' to include [specific information]"); *id.* at ¶ 52 ("The 2018 CDA defines 'confidential information' to include [specific information]"); *see also* D.I. 2-11 at ¶ 8 (defining the term of confidentiality/non-use for the 2015 CDA); D.I. 2-14 at ¶ 4(a) (same for the 2018 CDA).

Since Avadel pleads that Jazz purportedly "began" to violate the 2010 CDA "on or about 2014" based on the alleged use of the 2010 Micropump® Deck (*see, e.g.*, D.I. 2 at ¶ 162),

- 10 -

Avadel would at least need to plead that the 2010 Micropump® Deck fits within any definition of "confidential information" in the alleged 2010 CDA, and that any confidentiality/non-use provisions would have been in effect and would have prohibited such use at the time of the alleged violations.  Without pleading such facts, Avadel fails to "identify any sufficiently definite metric for any party to the [agreement], let alone the Court, to discern" whether any alleged breach has occurred.  *Pulieri*, 2015 WL 691449, at *7 (granting motion to dismiss because "one cannot know which [event has occurred] to satisfy the . . . Condition"); *see also e.g.*, *Frye*, 2021 WL 4073425, at *3 (granting motion to dismiss where the alleged agreement was "not signed by Defendants" and "[t]he Agreement is also missing the settlement date and the terms and conditions that must be in an agreement for sale of real property"); *Michaels Dev. Grp. Inc. v. Greene*, 700 N.Y.S.2d 275, 276 (N.Y. App. Div. 1999) (affirming that a "single-page letter written from one sophisticated [party] to another" was not "sufficiently definite and certain as to constitute an offer to sell [property]").  Count I fails for this additional reason.

### 2. Count II does not sufficiently plead that Jazz breached the 2015 CDA

Jazz does not dispute the existence of the 2015 CDA, but judgment on the pleadings is still proper for Count II.  The 2015 CDA states that "[t]his Agreement and any dispute related hereto will be governed and construed in accordance with the laws of New York."  D.I. 2-11 at ¶ 9.  Under New York Law, Avadel must plead, *inter alia*, Jazz's alleged breach of the 2015 CDA.  *See Detringo v. S. Island Fam. Med., LLC*, 158 A.D.3d 609, 609-10 (N.Y. App. Div. 2018).

Avadel's claim for breach of the 2015 CDA hinges on its pleading that, "[o]n April 1, 2015, Avadel sent Jazz a summary report of its pilot clinical study in humans ('2015 Study Report.')."  D.I. 2 at ¶ 46; *see also id.* at ¶ 138.  But Avadel's pleading need not be accepted as true because it is contradicted by exhibits to the Complaint, and when exhibits to the Complaint contradict the allegations therein, "the exhibits control."  *Vorchheimer*, 903 F.3d at 112.

Avadel cites Exhibit 13 as purported support for the above-quoted allegation. ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ D.I. 2-13 at AVDL_01111376; *see*

*also* D.I. 18 at ¶ 46. The 2015 CDA attached to the Complaint expressly states that Jazz was

using an external, third-party consultant (Benet) as the "Designated Recipient" of any allegedly

confidential information. *See, e.g.*, D.I. 18 at 42; D.I. 2-11 at 1. The 2015 CDA further states:

> Flamel shall **only** disclose Confidential Information by providing
> the information **solely** to the Designated Recipient unless otherwise
> authorized in a writing signed by authorized representatives of each
> Party in accordance with Section 11 below amending this
> Agreement.

D.I. 2-11 at ¶ 2 (emphasis added); *see also* D.I. 18 at ¶ 43. The 2015 CDA also states that Benet

was allowed to provide only "his general professional opinion or evaluation of Flamel's

Confidential Information [to Jazz] . . . in order for [Jazz] to evaluate the possibility of a business

relationship with Flamel," and that, "the Designated Recipient's opinion or evaluation **will not**

include the specific Confidential Information described on Exhibit A." *Id.* (emphasis added).

The 2015 CDA permitted Flamel to disclose confidential information solely to Benet (not

to Jazz), and Benet was prohibited from disclosing that information to Jazz. The Complaint does

not allege that the 2015 CDA was ever "amend[ed]" "in a writing signed by authorized

representatives of each Party" to allow the disclosure of any confidential information directly to

Jazz, or that Benet breached the terms of the 2015 CDA and disclosed confidential information

to Jazz. And to the extent that Avadel argues that Flamel provided information directly to Jazz,

that would be a breach **by Flamel, not Jazz**, and such information would not be considered

confidential and would not have the safeguards afforded under the agreement. D.I. 2-11 at ¶ 2.

Accordingly, Avadel has failed to plausibly plead that Jazz breached the 2015 CDA. *See*

*Golub Cap. LLC v. NB Alts. Advisers LLC*, No. 21-399, 2022 WL 540653, at *13 (S.D.N.Y. Feb.

- 12 -

22, 2022) ("Because Plaintiff has not alleged that [the Recipient] did anything it was not allowed to do under the NDA, it has not alleged facts sufficient to 'nudge [its] claim across the line from conceivable to plausible.'").  Indeed, without receiving any allegedly confidential information, Jazz could not plausibly breach the 2015 CDA, and Avadel's claim cannot survive.  *See, e.g.*, *Omega Optical, Inc. v. Chroma Tech. Corp.*, 800 A.2d 1064, 1068 (Vt. 2002) ("[D]efendants did not receive the information in confidence and, therefore, did not breach their duty of confidence . . . ."); *cf. In re Aqua Hotel Corp.*, 251 F.2d 138, 141 (9th Cir. 1957) (finding no breach of attorney-client privilege because attorney "did not come into possession of confidential information").  Judgment should, therefore, be entered in Jazz's favor on Count II.

### 3.   Count III does not sufficiently plead that Jazz breached the 2018 CDA

As with the 2015 CDA, Jazz does not dispute the existence of the 2018 CDA.  The 2018 CDA is also governed by New York law (*see* D.I. 2-14 at ¶ 6(c)), and Avadel has again failed to plausibly plead any breach by Jazz.  *See Detringo*, 158 A.D.3d at 609-10.

Avadel pleads that, "[b]y July 2018, Avadel provided to Jazz a package of confidential information,"[7] and that "Jazz breached its duty of nondisclosure and non-use by using such information to [1] develop its own once-nightly formulation and [2] file patent applications based upon Avadel's confidential information" in violation of the 2018 CDA.  *See, e.g*., D.I. 2 at ¶¶ 146-147.  Both allegations fail to state a plausible claim for relief.

*First*, Avadel's allegation that Jazz violated the 2018 CDA by using Avadel's purported confidential information to "develop its own once-nightly formulation" is a bald, conclusory assertion that need not be accepted as true.  *In re Burlington*, 114 F.3d at 1429-30.  Specifically,

---

[7]  The disclosure was no earlier than July 13, 2018, as evidenced by indisputably authentic emails that form the basis for Avadel's disclosure claim (*see* D.I. 18 at ¶¶ 58-62; ████████ ██  and which the Court may consider at this stage (*see Wolfington*, 935 F.3d at 195-96).

Avadel does not plead what—or how—information disclosed under the 2018 CDA was purportedly used in Jazz's development work.  Instead, all allegations of breach in the Complaint concerning Jazz's development work **predate Avadel's July 13, 2018 disclosure of information**. *See, e.g.*, D.I. 2 at ¶ 86 (alleged 2010 events); *id.* at ¶¶ 89-90 (alleged 2015/2016 events); *id.* at ¶ 114 (alleged January 2018 events).  Therefore, Avadel has not sufficiently pled that Jazz had any of Avadel's allegedly confidential information at the time of the alleged breaches—all of which Avadel pleads occurred **before** Avadel's July 13, 2018 disclosure under the 2018 CDA.

*Second*, Avadel's allegation that Jazz used Avadel's purportedly confidential information to "file patent applications" is contradicted by the patent applications themselves and exhibits attached to the Complaint.  As such, this allegation also need not be accepted as true.  *See Vorchheimer*, 903 F.3d at 112; *Wolfington*, 935 F.3d at 195.  Again, all allegations of breach in the Complaint that relate to Jazz's patent applications **predate July 13, 2018**.

The Sustained Release Patents:  Avadel pleads that Jazz used Avadel's allegedly confidential information to file the application that led to the '488 patent with "claims directed to a generic formulation (rather than a compressed tablet) comprising specifically methacrylic acid-methyl methacrylate copolymers (rather than one polymer comprising ethylcellulose and at least one polymeric 'pore former'), and recited a specific dissolution profile defined by tests performed 'in a dissolution apparatus 2 in deionized water at a temperature of 37°C and a paddle speed of 50 rpm' (rather than reciting attributes following administration)."  D.I. 2 at ¶ 108; *see also id.* at ¶ 109.  The Sustained Release Patents claim priority to a provisional patent application filed on March 24, 2010 (before any purported disclosure of confidential information from Flamel or Avadel to Jazz).  D.I. 18 at ¶ 102.  Avadel pleads, however, that "none of the Sustained Release Patents have written description support in their specification for any of their

- 14 -

claims and thus do not have a priority date earlier than the filing date of those claims in which the new matter was added." *See* D.I. 2 at ¶ 113; *see also id.* at ¶¶ 183, 191, 199, 207 (same).

Even accepting Avadel's lack-of-written-description pleading as true—it is not—Avadel overlooks that the "filing date" of the '488 patent's claims is July 2, 2018—***11 days before*** Avadel disclosed any information to Jazz under the 2018 CDA on July 13, 2018. *See* D.I. 18 at ¶ 108. And even though the remaining Sustained Release Patents were filed after July 13, 2018, Avadel does not plead that any patent claim elements—other than those discussed above for the '488 patent—were purportedly incorporated from Avadel's allegedly confidential information into the Sustained Release Patents. *See* D.I. 2 at ¶ 110-112. Thus, Avadel fails to plead that Jazz had any confidential information at the times of the purported breaches, and therefore fails to sufficiently plead any breach of the 2018 CDA based on the Sustained Release Patents' claims.

The Controlled/Modified Release Patents: Avadel alleges that Jazz drafted the claims of these patents based on Avadel's confidential information. *See, e.g*., D.I. 2 at ¶¶ 118, 122. But these patents claim priority to a non-provisional application filed on February 18, 2016 and a provisional application filed on February 18, 2015, both predating any disclosures under the 2018 CDA. *See* D.I. 2 at ¶¶ 78-79, Exs. 42-43. And, unlike the Sustained Release Patents, Avadel does ***not*** plead that the priority applications for the Controlled/Modified Release Patents lack written description for the claims that Avadel alleges Jazz drafted based on Avadel's confidential information. *Compare, e.g*., D.I. 2 at ¶¶ 183, 191, 199, 207 (pleading lack of written description for the Sustained Release Patents) *with id. generally* (no such pleading for the Controlled/Modified Release Patents). Thus, Avadel fails to plead that Jazz had any confidential information at the times of the purported breaches, and therefore fails to sufficiently plead any breach of the 2018 CDA based on the Controlled/Modified Release Patents' claims.

### B.    Counts IV and V (Trade Secret Misappropriation) Fail to State a Plausible Claim For Relief

Avadel alleges that Jazz misappropriated its trade secrets by (1) forwarding slide decks sent (unsolicited) to Jazz in 2010; and (2) using information disclosed under the 2015 and 2018 CDAs for purposes other than evaluating a potential partnership with Avadel.  *See* D.I. 2 at ¶¶ 149-180.  However, even when construed in the light most favorable to Avadel, Counts IV and V do not state a claim for trade secret misappropriation upon which relief can be granted.

Avadel alleges that Counts IV and V arise under 18 U.S.C. § 1836 and Cal. Civ. Code § 3426, respectively.  Under both statutes, Avadel must plead, among other things, (1) "the existence of a trade secret," and (2) "misappropriation of that trade secret."  *Oakwood Lab'ys. LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021); *accord Wixen Music UK Ltd. v. Transparence Ent. Grp.*, No. 21-2663, 2021 WL 6065690, at *6 (C.D. Cal. Dec. 22, 2021) ("An adequate trade secret misappropriation claim must contain allegations that: (1) the plaintiff owned a trade secret, (2) that the defendant misappropriated . . . .").  As explained below, Avadel has not plausibly pled that: (1) information sent to Jazz in 2010 was a trade secret; or (2) Jazz misappropriated any of Avadel's information provided under either the 2015 CDA or 2018 CDA.

### 1.    Counts IV and V do not sufficiently plead that slide decks provided to Jazz in 2010 contained trade secrets

"Under both federal and [California] law, information qualifies as a trade secret if," *inter alia*, "the owner has 'taken reasonable measures to keep such information secret.'"  *Wixen Music*, 2021 WL 6065690, at *6 (quoting 18 U.S.C. § 1839 (3)(A)–(B) and citing Cal. Civ. Code. § 3426.1(d)(1)-(2)).  Avadel does not plead sufficient facts to show that it took any measures, let alone reasonable measures, to protect any alleged trade secrets in the 2010 Trigger Lock™ Deck or the 2010 Micropump® Deck.  Avadel's pleadings fail for the following reasons:

*First*, Avadel pleads that it "ha[d] a 2010 CDA in place before sharing the trade secret[s]" in the 2010 Trigger Lock™ Deck and the 2010 Micropump® Deck.  D.I. 2 at ¶¶ 154, 168.  But as explained above, Avadel has not sufficiently pled the existence of an alleged 2010 CDA (*see supra at* IV.A.1), and "failure to enter into nondisclosure or confidentiality agreements often dooms trade secret claims."  *Abrasic 90 Inc. v. Weldcote Metals, Inc.*, 364 F. Supp. 3d 888, 898-99 (N.D. Ill. 2019) (collecting cases).  "If an individual discloses his trade secrets to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished."  *Feenix Payment Sys., v. Steel Cap. Mgmt.*, No. 20-1519, 2021 WL 2587844, at *4 (D. Del. June 24, 2021) (quoting *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984)); *see also Hospitality Mktg. Concepts v. Six Continents Hotels*, No. 15-1791, 2016 WL 9045853, at *5 (C.D. Cal. May 2, 2016) (granting dismissal because "[Plaintiff's] failure to enter a confidentiality or non-disclosure agreement before voluntarily disclosing its alleged trade secrets . . . extinguished their secrecy"); *Profit Point Tax Techs. v. DPAD Grp.*, No. 19-698, 2020 WL 759952, at *6 (W.D. Pa. Jan. 29, 2020), *report and recommendation adopted,* No. 19-698, 2020 WL 758833 (W.D. Pa. Feb. 14, 2020) ("By describing . . . albeit limited disclosures, to third parties with no alleged duty to maintain secrecy, [plaintiff] undercuts its claim that this information was a 'trade secret.'").

*Second*, Avadel implies that **Flamel** sent the 2010 Trigger Lock™ Deck and the 2010 Micropump® Deck directly to Jazz.  *See, e.g*., D.I. 2 at ¶ 30.  Exhibits to the Complaint, however, demonstrate that is incorrect.  Instead, the two slide decks were sent from ***third party Clough*** to Jazz.  *See* D.I. 2-6; D.I. 2-7; *see also* D.I. 18 at ¶ 30.  Avadel does not plead that it had any confidentiality agreements with Clough or that Clough had any with Jazz.  Moreover, Exhibit 6 to the Complaint states that Clough "had several independent consultants and experts

- 17 -

evaluate and sign-off on [Flamel's] technology prior to [his] involvement with the company."
D.I. 2-6 at JPION00030652; *see also* D.I. 18 at ¶ 30.  Avadel also does not plead that it had
confidentiality agreements with any of those "several independent consultants and experts."  *Id.*
As noted in the previous paragraph, Avadel's failure to enter into CDAs, and its disclosure of
allegedly trade secret information to third parties (who in turn disclosed the information to Jazz)
without any obligation to maintain confidentiality, dooms its trade secrets claims.

     *Third*, Avadel pleads that its purported trade secrets "were shared using a cloud service
that provides encryption at-rest and in-transit, and implements access controls to limit access to
specific recipients."  D.I. 2 at ¶¶ 154, 168.  Again, exhibits to the Complaint contradict this
pleading; the 2010 Trigger Lock™ Deck and the 2010 Micropump® Deck were attached to
unsolicited emails sent from third party Clough to Jazz.  *See* D.I. 2-6; D.I. 2-7; D.I. 18 at ¶ 30.

     *Fourth*, Avadel pleads that it "prominently display[ed] the legend 'CONFIDENTIAL' on
materials containing the trade secrets that were disclosed to Jazz, including the 2010
Micropump® Deck."  D.I. 2 at ¶¶ 154, 168.  As an initial matter, and as explained above,
unilaterally marking something "CONFIDENTIAL" does not impose any obligations upon
another party to maintain confidentiality.  *See supra* at IV.A.1.(a); *see also Hospitality Mktg.*,
2016 WL 9045853, at *5 (dismissing trade secret claims despite plaintiff alleging that "it marked
as confidential certain alleged trade secrets in its proposal").  Moreover, Avadel conspicuously
omits the 2010 Trigger Lock™ Deck from the above allegation.  Avadel pleads earlier in the
Complaint, however, that "the 2010 Trigger Lock™ Deck . . . contained information regarding
Avadel's Micropump® technology" (D.I. 2 at ¶ 75) and was "part of its 'confidential
discussion[s]' [with Jazz] in 2010" (*id.* at ¶ 30).  But as Exhibit 6 to the Complaint states, Jazz

was told by Clough that the 2010 Trigger Lock™ Deck was "non-confidential" (D.I. 2-6 at JPION00030652; *see also* D.I. 18 at ¶ 30), which directly contradicts Avadel's pleading.

In sum, Avadel does not plead sufficient facts showing that any information contained in the 2010 Trigger Lock™ Deck and the 2010 Micropump® Deck were protectable trade secrets.

### 2.   Counts IV and V do not sufficiently plead that Jazz misappropriated any trade secrets in 2015 or 2018

"Under both [18 U.S.C. § 1836 and Cal. Civ. Code § 3426], 'misappropriation' means either (1) the acquisition of a trade secret by another person who knows or has reason to know that the trade secret was acquired by improper means; or (2) the disclosure or use of a trade secret of another without express or implied consent." *MicroVention, Inc. v. Balt USA, LLC*, No. 20-2400, 2021 WL 4734611, at *3 (C.D. Cal. Sept. 9, 2021). Either basis, however, requires that Jazz possessed the alleged trade secret information at the time of the purported misappropriation. *See id.* Avadel has failed to plead sufficient facts to meet that requirement.

*First*, as explained above, Avadel failed to plausibly plead that Jazz (as opposed to Benet) received any information under the 2015 CDA. *See supra* at § IV.A.2. *Second*, as explained above, Avadel failed to plausibly plead that Jazz had access to any purported trade secret information under the 2018 CDA before (as opposed to after) the alleged misappropriations. *See supra* at § IV.A.3. Because Avadel did not plead that Jazz had access to any purported trade secrets at the time of alleged misappropriations, Avadel has failed to plead that misappropriation occurred, or even could have occurred. Judgment should, thus, be entered on Counts IV and V.

### C.   Counts VI-XI (Correction of Inventorship) Fail to State a Plausible Claim For Relief

"The general rule is that a party alleging misjoinder or non-joinder of inventors must meet the heavy burden of proving its case by clear and convincing evidence and must provide evidence to corroborate the alleged joint inventor's conception." *Eli Lilly & Co. v. Aradigm*

*Corp.*, 376 F.3d 1352, 1358 (Fed. Cir. 2004).  "In order to survive this motion" on the pleadings, Avadel must plead more than "conclusory statements amounting to a recitation of the legal requirements for patent inventorship and ownership [that] are unsupported by any pleaded facts." *Intercept Pharms., Inc. v. Fiorucci*, No. 14-1313, 2017 WL 253966, at *2 (D. Del. Jan. 20, 2017); *see also Iceotope Grp. Ltd. v. LiquidCool Sols., Inc.*, No. 20-2644, 2022 WL 204923, at *3 (D. Minn. Jan. 24, 2022) ("Iceotope's complaint alleges that the inventions claimed in the LiquidCool Patents were conceived by five Iceotope employees . . . .  This conclusory allegation, without more, is insufficient to plausibly allege conception by these five individuals.").

Counts VI-XI recite legal standards in conclusory fashion (*see* D.I. 2 at ¶¶ 181-228) and, therefore, fail to state a plausible claim.  *See Muth*, 755 F. App'x at 112; *Intercept*, 2017 WL 253966, at *2; *Iceotope*, 2022 WL 204923, at *3.  To the extent that Counts VI-XI are based on Avadel's breach and misappropriations pleadings, they fail for the reasons discussed above.  *See supra* at §§ IV.A-B.  Further, to the extent the claims are rooted in allegations that Jazz purportedly drafted patent claims based on Avadel's publicly available patent publications, the Federal Circuit has expressly authorized such conduct absent other inappropriate conduct, none of which (as explained above) exists here.  *See Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 874 (Fed. Cir. 1988) ("[T]here is nothing improper, illegal or inequitable in filing a patent application for the purpose of obtaining a right to exclude a known competitor's product from the market; nor is it in any manner improper to amend or insert claims intended to cover a competitor's product the applicant's attorney has learned about during the prosecution of a patent application.").  The Court should enter judgment in Jazz's favor for Counts VI-XI.

## VI.    CONCLUSION

For the foregoing reasons, Jazz respectfully requests that the Court grant its motion for judgment on the pleadings pursuant to Rule 12(c).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

*Attorneys for Defendants*
*Jazz Pharmaceuticals, Inc. and*
*Jazz Pharmaceuticals Ireland Limited*

OF COUNSEL:

F. Dominic Cerrito
Gabriel P. Brier
Frank C. Calvosa
Adam DiClemente
QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Joseph M. Paunovich
QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

Abigail E. Clark
QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
2601 South Bayshore Drive, Suite 1550
Miami, FL 33133
(305) 402-4880

July 8, 2022

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 8, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on July 8, 2022, upon the following in the manner indicated:

Daniel M. Silver, Esquire                        *VIA ELECTRONIC MAIL*
Alexandra M. Joyce, Esquire
MCCARTER & ENGLISH, LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE  19801
*Attorneys for Plaintiffs*

Kenneth G. Schuler, Esquire                   *VIA ELECTRONIC MAIL*
Marc N. Zubick, Esquire
Alex Grabowski, Esquire
Sarah W. Wang, Esquire
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL  60611
*Attorneys for Plaintiffs*

Herman H. Yue, Esquire                       *VIA ELECTRONIC MAIL*
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY  10020
*Attorneys for Plaintiffs*

Sarah Propst, Esquire                          *VIA ELECTRONIC MAIL*
Audra Sawyer, Esquire
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C.  20004-1304
*Attorneys for Plaintiffs*

Yi Ning, Esquire                                    *VIA ELECTRONIC MAIL*
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
*Attorneys for Plaintiffs*

Daralyn J. Durie, Esquire                           *VIA ELECTRONIC MAIL*
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, CA  94111
*Attorneys for Plaintiffs*

Kira A. Davis, Esquire                              *VIA ELECTRONIC MAIL*
Katherine E. McNutt, Esquire
DURIE TANGRI LLP
953 East 3rd Street
Los Angeles, CA  90013
*Attorneys for Plaintiffs*

                              */s/ Jeremy A. Tigan*

                              _____

                              Jeremy A. Tigan (#5239)